Henry S. Sundgren et al
          vs.                Eq.No.7884
Victor Howard et al
          June 1, 1926

TANNER, P. J. This is a bill in equity heard upon petition for preliminary injunction.

The complainants bought a piece of land substantially thirty feet wide in 1916. Their predecessor in title, Ingeborg Svenson, bought this same lot in 1912. The strip of land in dispute adjoins the lot which was bought by Svenson and Sundberg. Said strip of land is five feet on the front, fifteen feet on the rear and about sixty-four feet in length. This additional strip of land extended to a retaining wall. According to the evidence, both the complainants' predecessor in title and the complainants have occupied this additional strip of land since 1912. They have placed loam upon it, planted flowers just next to said retaining wall, planted bushes and trees near said wall, and maintained a wire fence on the top of said retaining wall extending the whole length of sixty-four feet. Both the complainants and their predecessor in title testified that they always believed that their title included this strip of land in dispute. Under questioning, however, they admitted that they would not have occupied this disputed strip of land if they had known where the true line was.

The respondents cite a number of cases which, according to 1st Cyc, Law of Procedure, page 983, are supported by the great weight of authority, that occupation under ignorance as to the title, with no intention to claim more than occupier owns, does not amount to such an adverse hostile possession as is necessary under the claim of title by adverse possession. There are cases small in number which maintain the contrary doctrine. This contrary doctrine appears to have been adopted in this state in the case of Dodge vs. Lavin, 34 R. I. at page 578.

This view, we think, is supported by the decision in Union Savings Bank vs. Taber, 13 R. I., page 683, at pages 694 and 695:

"The General Assembly was free to enact a mere statute of limitations if satisfied with it. The statute of 21 James I. cap. 16, which is the great prototype of such statutes, preceded our statute of possessions by

merely a century. The differences between the two statutes were, therefore, undoubtedly not without a design, and not without a design, too, which would be thwarted if the two statutes were assimilated by construction. Ours was meant to be the more stringent, summary, and absolute in its operation. The preamble shows it. According to the preamble, the statute was passed to prevent 'great contests in law,' which were imminent, because 'at the first settling of this State, and for sundry years afterwards, lands were of little or no value, and skilful men in the law were much wanted, whereby many deeds, grants, and conveyances were weakly made.' It was therefore a prominent purpose to make time the healer of precisely such defects as are the cause of the difficulty here, namely, defects of conveyancing. It is the duty of the court to promote rather than defeat this purpose. The statute is neither to be weakened by implication or attenuated by borrowed glasses. Its strong and aggressive words are to be as strongly and aggressively interpreted; and, in this view, possession must be taken to be adverse, in the only sense in which it need be adverse under the statute, when it fulfills the express requirements of the statute; for then the possessor holds under a claim of right which is in derogation of all other rights and therefore adverse to them."

It thus appears that possession must be taken to be adverse in the only sense in which it need be adverse under the statute when it fulfills the express requirements of the statute, for then the possessor holds under a claim of right which is in derogation of all other rights and therefore adverse to them.

Taking, therefore, the language of our statute; "shall have been for the space of ten years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements and hereditaments for and during the said time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, such actual seisin and possession shall be allowed to give and make a good and rightful title to such person or persons, their heirs and assigns forever," &c., it seems to be sufficient to find, as we must in this case, that the complainants' possession has been according to the literal terms of our statute.

The respondents have referred us to the case of Draper vs. Monroe, 18 R. I., page 398. That case, however, seems to us to have no application to the case at bar. The defendant had had no possession, adverse or otherwise, of the land in question for the statutory period and, as the court said:

"There is no plea of adverse possession in this case; but the defendant claims that by reason of his occupation of lot 90, Draper was disseized and so could not afterwards give a title to his grantee. The question then is whether the evidence, aided by the deed, would show a disseisin to bar the plaintiff's action. We think not. The question before us is not the effect of a holding for twenty years but simply the question of a disseisin. It is essential to a disseisin that there should be an entry with the intention to usurp the possession and oust the true owner of his freehold. As Kent says: 'There was a distinction between dispossession and disseisin; that disseisin was a wrong to the freehold, and made in defiance and contempt of the true owner. It was an open, exclusive, adverse entry and expulsion; whereas dispossession might be by right or by wrong, and it was necessary to look at the intention in order to determine the character of the act,' " etc.

The court evidently means by this language to refer to the well-known rule that the owner of land can not give a good title by deed to a grantee

of land from which he has been ousted, even though such ouster be wrongful for the reason that such a deed would promote champerty and maintenance. The court in its language is, therefore, stating the rule to show a disseisin which would prevent the owner from making a deed of said land while disseisin existed.

The respondents also in their brief maintain that the complainants' possession has not continued for the statutory period for the reason that it was interrupted by a survey made by the respondents four years ago.

We very much doubt if the testimony as to this survey would constitute any interruption of possession. Surveys are constantly being made in the course of which it is necessary for surveyors to enter upon lands that are not even claimed to belong to the person for whom they are surveying. We do not think the evidence shows that this survey was brought to the attention of the complainants at the time so that they knew that there was any attempted interruption of their possession. Furthermore, the complainants have a right to attach their possession to that of their predecessor in title which extended back to the year 1912.

We therefore feel obliged to grant a preliminary injunction.

For Complainants: Walter I. Sundlun.

For Respondents: J. H. McGeough.